UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DIGITAL ASSURANCE CERTIFICATION, LLC,

    Plaintiff,

v.       Case No:   6:17-cv-72-Orl-31TBS

ALEX PENDOLINO, JR. ,

    Defendant.

## ORDER

This alleged theft of trade secrets case comes before the Court without oral argument on Plaintiff's Motion for Limited Expedited Discovery (Doc. 29). Defendant opposes the motion (Doc. 39). Alternatively, if the motion is granted, then Defendant wants expedited discovery from Plaintiff (Id.).

Plaintiff, Digital Assurance Certification, LLC ("DAC") is in the business of helping issuers of municipal bonds and private sector borrowers of municipal bond proceeds comply with Securities and Exchange Commission ("SEC") regulations and post-issuance tax requirements (Doc. 1, ¶ 6). It also acts as a dissemination agent for voluntary and required disclosures made by its clients (Id.). DAC alleges that in the conduct of its business, it "relies on trade secret laws to protect its client lists, client contracts, pricing information, client reports and its methodologies, analyses, systems, and tools, … all of which involve the use of valuable information proprietary to DAC that is not known to the general public." (Id., ¶ 12). DAC states that it takes "significant steps to protect" its trade secrets (Id., ¶ 13), including by requiring each employee to sign a confidentiality agreement, DAC's computer system is password protected, and all employees are

required to create new, complex passwords every 90 days (Id., ¶ 15). The contracts between DAC and its clients also contain restrictions to preserve the confidentiality of DAC's work product (Id., ¶ 16).

Defendant was employed by DAC from August 6, 2013 through October 10, 2017 (Doc. 44, ¶ 1). His work included compliance reviews for clients, answering banker and client questions, responding to requests for proposals, participation in contract negotiations, drafting contracts, marketing DAC's services, answering in-house questions, and obtaining documents and bond identification numbers from the Municipal Securities Rule Making Board's Electronic Municipal Market Access ("EMMA") website and Bloomberg terminal (Id., ¶ 3).

On October 10, 2016, Defendant resigned from DAC (Doc. 1, ¶ 21). The next day, DAC sent Defendant a letter informing him that his resignation was not accepted and that he was being terminated for cause (Id., ¶ 23). Defendant now works for Lumesis, Inc., which is one of DAC's competitors (Id., ¶ 26).

DAC alleges that in the week before Defendant left its employ, he inserted a USB drive into his work computer and accessed every document on DAC's shared drive (Id., ¶ 29). Those documents contain: "(1) the identity of DAC's clients; (2) pricing information, including standard pricing and customized pricing (such as discounts or pricing formulas) used for specific clients, and other specific contract terms; (3) a description of the services and processes provided to each of DAC's clients, including standard services and any customized services; and (4) analyses undertaken by DAC regarding clients' regulatory obligations and their compliance history." (Id., ¶ 31). DAC asserts that this information is proprietary, and would be highly useful in the hands of a competitor (Id.). DAC also alleges that prior to his separation from employment, Defendant had custody of

executed client contracts containing trade secrets including the identity of clients, pricing information, and information about the customized services provided to clients (Id., ¶ 24). After Defendant left, these contracts could not be located in his office (Id.).

DAC's complaint alleges that Defendant has: (1) violated the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836; (2) violated the Florida Uniform Trade Secrets Act; (3) violated FLA. STAT. §§ 688.001 et seq.; (3) breached a confidentiality agreement; and (4) violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (Id.). DAC has filed a motion for temporary restraining order (Doc. 20), which is set for hearing on March 2, 2017. In preparation for the hearing, DAC seeks expedited discovery from Defendant.

Defendant has filed his own declaration in which he states that he did not access all of DAC's files in the week before he left, he never downloaded those files, he did not retain any of DAC's electronic or paper files, and he does not have possession of any of DAC's confidential or proprietary information (Doc. 44, ¶¶ 46-47). Defendant also states that all of the information he used to perform his duties for DAC was based on information available from public sources, including Official Statements, Audited Financial Statements, Annual Financial Information and Operating Data, and Event Notices that are publicly available through the EMMA website (Doc. 44, ¶¶ 6-7). According to Defendant, other information, including the identity of potential clients, is available from the SEC website (Id., ¶ 8). He says he is not aware of any specialized process, procedures or algorithms used by DAC to obtain or compile the information he used and to which he had access (Id., ¶ 9). Defendant also states that the names of DAC's issuer clients are publicly available on its website, or the Issuers' Official Statements (Id., ¶ 10). He asserts that because DAC's issuer clients are public entities, its pricing agreements with those clients are posted online through the public entity's websites as a matter of public record

(Id.). Defendant says that while a password was required to access DAC's shared network, once on the network, none of DAC's information was password protected. And, Defendant asserts that during the entire time he was employed by DAC, his password never changed and he was never prompted or asked to change it (Id., ¶¶ 12-13).

Defendant has also filed the declaration of Lumesis' President and Chief Operating Officer, Timothy J. Stevens (Doc. 41). According to Mr. Stevens, an investigation has been conducted, and none of the folders and files saved on Defendant's work computer contain DAC's information relating to its clients, pricing, technology, services, or the like (Id., ¶ 7). The investigation has also not uncovered any evidence that Defendant "has provide Lumesis with any documents, data, trade secret or confidential information regarding DAC, its services and products, pricing or clients." (Id., ¶ 8). Finally, Mr. Stevens states that he "was able to confirm that there is no reasonable basis to believe that [Defendant] has used or provided any DAC documents, data or information through any of Lumesis' electronic network systems, or utilized it in the performance of his work for Lumesis." (Id., ¶ 9).

This Court utilizes the good cause standard to determine whether expedited discovery should be permitted. Biosense Webster, Inc. v. Scott, No. 6:13-cv-258-Orl-27TBS, 2013 WL 1611338, at *1 (M.D. Fla. April 15, 2013) (citing Nassau Terminals, Inc. v. M/V Bering Sea, No. 99-104-CIV-J-20C, 1999 WL 1293476, at *1(M.D. Fla. July 1, 1999) (stating that moving party has the burden of showing good cause why discovery should be expedited) vacated on other grounds, 2013 WL 5596239; Dell, Inc. v. BelgiumDomains, LLC, No. Civ. 07-22674, 2007 WL 6862341, at *6 (S.D. Fla. Nov. 21, 2007); Semitool, Inc. v. Tokyo Electron America, Inc., 208 F.R.D. 273, 274 (N.D. Cal.

<mark>Case 6:17-cv-00072-CEM-TBS   Document 46   Filed 02/23/17   Page 5 of 8 PageID 345</mark>

2002)); Thyssenkrupp Elevator Corp. v. Hubbard, No. 2:13-cv-202-FtM-29SPC, 2013 WL 1953346, at *1 (M.D. Fla. May 10, 2013).

Factors the Court considers in deciding whether a party has shown good cause include: (1) whether a motion for preliminary injunction is pending; (2) the breadth of the requested discovery; (3) the reason(s) for requesting expedited discovery; (4) the burden on the opponent to comply with the request for discovery; and (5) how far in advance of the typical discovery process the request is made. Biosense at *1 (citing Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth., 234 F.R.D. 4, 6 (D.D.C. 2006)).

Some courts have observed that when there is a pending motion for a preliminary injunction, "expedited discovery is appropriate "because of the expedited nature of the injunctive proceedings." Philadelphia Newspapers, Inc. v. Gannett Satellite Information, No. CIV.A.98-CV-2782, 1998 WL 404820, at *2 (E.D. Pa. July 15, 1998) (quoting Ellsworth Associates, Inv. v. United States, 917 F.Supp. 841, 844 (D.D.C. 1996). Furthermore, expedited discovery may "better enable the court to judge the parties' interests and respective chances for success on the merits at a preliminary injunction hearing." Id. (citing Edudata Corp. v. Scientific Computers, Inc., 599 F.Supp. 1084, 1088 (D. Minn. 1984) *aff'd* in part, *rev'd* in part on other grounds, 746 F2d 429 (8th Cir. 1985)). This factor weighs in favor of granting Plaintiff's motion for expedited discovery.

Still, "courts generally deny motions for expedited discovery when the movant's discovery requests are overly broad." Id. DAC's proposed requests for production are not narrowly tailored to the time constraints under which the parties are operating, or the specific issues to be addressed at the hearing on the motion for a temporary restraining order. The time frame set by DAC in its requests to produce begins August 6, 2013 and

<mark>- 5 -</mark>

continues through the present and beyond, to the date of judgment or verdict (Doc. 29-1 at 5). This is overbroad given DAC's contention that the theft of its trade secrets and other confidential information occurred in October, 2016. The breadth and burdensomeness of DAC's requests for production is also evidenced by its definition of "Documents" which is seventeen lines long (Id., at 4). Adding to the problems with DAC's requests are instructions which include:

> If an document or thing is claimed to not be in Your possession or control, state the reasons for the lack of possession or control, the date such document or thing was last possessed, and the present location and custodian of the document or thing. In the event that any document or thing called for by these Requests has been lost or destroyed, please set forth with respect to each such document or thing:
>
> (1) the author(s), creator(s) or originator(s);
>
> (2) the addressee(s), custodian(s) or recipient(s);
>
> (3) the identity of each person who was sent, furnished or who received, viewed or has had custody of the document or thing:
>
> (4) the date of the document or the date on which the thing was created;
>
> (5) the date, place, manner, reason and circumstances of destruction;
>
> (6) the identity of persons authorizing destruction;
>
> (7) the identity of persons destroying the document or thing; and
>
> (8) the numbered document request to which the document or thing responds.

(Id.). The motion for expedited discovery was fully briefed on February 21, 2017, just eight days before the hearing on the motion for temporary restraining order. It is

unreasonable to expect Defendant to comply with instruction like this in the short time frame available to the parties.

DAC's requests for production, which the Court finds overbroad include:

> 5. All Documents reflecting or relating to any communications between and among You and another person that discuss, reference, relate to, or involve: (a) DAC; (b) DAC's Confidential or Trade Secret Information; DAC's technology; and (d) DAC's clients.
>
> 6. All Documents reflecting or relating to any communications between and among You and any former or current DAC client.
>
> 8. All Documents reflecting or relating to any communications with or among any current or former employee of DAC after your separation of employment from DAC.
>
> 10. All Documents that contain information used by Lumesis to develop its Summary Page.

(Id., at 6). While these matters may be relevant to the issues raised in DAC's complaint, they go far beyond what is needed for the hearing on the motion for a temporary restraining order. Moreover, DAC is asking Defendant to produce documents and things that belong to non-party Lumesis which, to the Court's knowledge, has not consented to the production of its information.

Defendant's declaration largely answers DAC's interrogatories. The information Defendant has provided addresses whether he believes he had access to any confidential or trade secret information belonging to DAC; why he asked for remote access to DAC's S-drive on October 5, 2017; what he downloaded before leaving work that day; whether he downloaded any information or removed any files on October 10, 2016; why he resigned from DAC; his alleged sharing of DAC's confidential and trade secret information; and the electronic devices he possesses. Additional information

- 7 -

requested in the interrogatories goes beyond what the Court will permit by way of early discovery in preparation for the upcoming hearing.

The remaining good cause factors also weigh in favor of Defendant. The burden of complying with DAC's proposed discovery, particularly the requests for production, is great, and the requested discovery is sought with little time remaining before the hearing on the motion for temporary restraining order.

For these reasons, DAC's motion for expedited discovery is **DENIED**. Because Defendant's request for expedited discovery is made in the alternative, it is mooted by this decision.

**DONE** and **ORDERED** in Orlando, Florida on February 23, 2017.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record