UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DIGITAL ASSURANCE CERTIFICATION, LLC,

    Plaintiff,

v.                                          Case No: 6:17-cv-72-Orl-41TBS

ALEX PENDOLINO, JR. and LUMESIS, INC.,

    Defendants.

## ORDER

This misappropriation of trade secrets case comes before the Court without a hearing on Defendant Alex Pendolino's Motion to Compel (Doc. 166) and Plaintiff Digital Assurance Certification, LLC's Motion to Compel Defendant Alexander Pendolino and Defendant Lumesis, Inc. to Grant Access to Electronic Media (Doc. 177).

### Background

Plaintiff Digital Assurance Certification, LLC ("DAC") alleges that before Defendant Alex Pendolino, Jr. resigned from its employ on October 10, 2017, he inserted a USB thumb drive, serial number 1019350241088504 (the "Identified USB") into his DAC-issued laptop computer (the "Laptop") and accessed all the information on DAC's shared drive (Doc. 90, ¶¶ 2, 65, 80-81). On November 28, 2016, Pendolino started working for DAC competitor, Defendant Lumesis, Inc. (Doc. 44, ¶ 59; Doc. 172 at 2). Fearing that Pendolino had stolen and delivered its confidential and trade secret information to Lumesis, DAC hired computer forensics expert Charles Platt to examine the Laptop (Id.). Platt made a forensic image of the Laptop's hard drive which he analyzed (Doc. 5 at 4, ¶¶

4-5). Platt has now opined *inter alia*, that:

> 1. The Identified USB was attached to the Laptop at 3:13 PM EDT on October 5, 2016 and 10:59 AM EDT on October 10, 2016.
>
> 2. Both times the Identified USB was attached to the Laptop Pendolino's user account was logged into the computer.
>
> 3. The Laptop was in Pendolino's possession when the Identified USB was attached on October 5 and October 10, 2016.
>
> 4. There is no evidence indicating the use for which the Identified USB was attached to the Laptop. This is consistent with the copying of files from the Laptop to the Identified USB.
>
> 5. No evidence was found on the four other DAC computers that allowed the use of a USB storage device. This indicates that the Identified USB was never attached to those computers.
>
> 6. There were no artifacts indicating USB storage device activity present, and therefore the Laptop was not used to access data resident on the Identified USB.
>
> 7. The version of Windows in use on the Laptop does not leave artifacts when a file is copied from it to an attached USB.

(Doc. 172-2). DAC says Pendolino had no business reason to attach a USB drive to the Laptop, or to access all information on its shared drive (Doc. 90, ¶¶ 80-81).

In its Second Amended Verified Complaint DAC alleges that Pendolino and Lumesis violated the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 and the Florida Uniform Trade Secrets Act, FLA. STAT. § 688.001 *et seq.*; that Pendolino breached his confidentiality agreement with DAC;[1] and that Lumesis tortuously interfered with DAC's relationship with Pendolino (Doc. 90).

---

[1] Pendolino signed an agreement promising to maintain the confidentiality of DAC's proprietary information (Doc. 90-2). He did not sign a non-compete agreement with DAC (Doc. 188 at 4, fn. 3).

Pendolino denies taking any information from DAC by any means at any time (Doc. 44, ¶ 72). He denies uploading or downloading "any DAC information to the Lumesis computer or systems by any method–USB, cloud or otherwise …" (Id., ¶ 61). And, he denies providing "any information to Lumesis, or any of its employees or agents, regarding DAC's pricing, customers or prospective customers, or any other information regarding DAC." (Id., ¶ 66).

Lumesis' President and Chief Operating Officer, Timothy J. Stevens has declared that after investigation he "was able to confirm that there is no reasonable basis to believe that Pendolino has used or provided any DAC documents, data or information through any of Lumesis' electronic networks or systems, or utilized it in the performance of his work for Lumesis." (Doc. 41, ¶ 9). Stevens has testified that Lumesis "reviewed Pendolino's computer hard drive, recycle bin, email, cloud network storage system and determined that no DAC materials have been provided by, uploaded or utilized by Pendolino in the performance of his services for Lumesis." (Id., ¶ 6). Stevens has also declared that "Lumesis has found no evidence that Pendolino provided Lumesis with any documents, data, trade secret or confidential information regarding DAC, its services and products, pricing or clients, and does not maintain such information on his Lumesis computer." (Id., ¶ 8).

DAC argues that Platt's analysis contradicts Pendolino's claim that he did not insert a USB device into the Laptop and download information on October 10, 2016 (Doc. 172 at 2-3). It also disputes Stevens' testimony that Lumesis performed a complete forensic examination of Pendolino's Lumesis' issued computer (Id., at 5-6). DAC contends that these alleged misrepresentations are sufficient reason for the Court to deny Pendolino's motion to compel (Id.).

- 3 -

## Legal Standards

Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. FED. R. CIV. P. 26. "The discovery process is designed to fully inform the parties of the relevant facts involved in their case." U.S. v. Pepper's Steel & Alloys, Inc., 132 F.R.D. 695, 698 (S.D. Fla. 1990) (citing Hickman v. Taylor, 329 U.S. 495, 501 (1947)). "The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result." Oliver v. City of Orlando, No. 6:06-cv-1671-Orl-31DAB, 2007 WL 3232227, at * 1 (M.D. Fla. Oct. 31, 2007) (citing United States v. Proctor & Gamble Co., 356 U.S. 677, 682 (1958)).

The party seeking to compel discovery has the burden of showing that the information sought is relevant to the lawsuit. Moore v. Lender Processing Servs. Inc., No. 3:12-CV-205-J, 2013 WL 2447948, at *2 (M.D. Fla. June 5, 2013); Bethea v. Comcast, No. CIV.A.02-1767 (RWR/JMF), 218 F.R.D. 328, 329-30 (D.D.C. Dec. 3, 2003).

"It is settled that, electronically stored information is discoverable under Rule 34(a) of the Federal Rules of Civil Procedure. 'During discovery, the producing party has an obligation to search available systems for the information demanded.'" Wynmoor Community Council, Inc. v. QBE Ins. Corp., No. 10-62411-CIV, 280 F.R.D. 681, 685 (S.D. Fla. Mar. 5, 2012) (quoting McPeek v. Ashcroft, 202 F.R.D. 31, 32 (D.D.C. 2001)).

Rule 34 authorizes the requesting party to "inspect, copy, test, or sample" the documents, things, and other information that is produced. FED. R. CIV. P. 34(a)(1). However, "[t]he addition of testing and sampling to Rule 34(a) with regard to documents

and electronically stored information is not meant to create a routine right of direct access to a party's electronic information system, although such access might be justified in some circumstances. Courts should guard against undue intrusiveness resulting from inspecting or testing such systems." Advisory Committee Notes 2006 Amendment; Floeter v. City of Orlando, No. 6:05-cv-4---Orl-22KRS, 2006 WL 1000306 at *3 (M.D. Fla. April 14, 2006) (Rule 34 permits a party to request documents, but it does not authorize the requesting party to conduct the actual search.); Powers v. Thomas M. Cooley Law School, No. 5:05-CV-117, 2006 WL 2711512, at *4 (W.D. Mi. sept. 21, 2006). Still, "allowing a party direct access to another party's databases may be warranted in certain situations, such as showing of non-compliance with discovery rules." Balfour Beatty Rail, Inc. v. Vaccarello, No. 3:06-cv-551-J-20MCR, 2007 WL 169628, at *3 (M.D. Fla. Jan. 18, 2007).

## Discussion

DAC would have the Court believe that Pendolino's requests for production, all of which are discussed below, are not relevant. It argues that once Pendolino denied inserting the Identified USB into the Laptop and failed to offer an alternative explanation for how that occurred the only remaining relevant question is whether Pendolino in fact plugged the Identified USB into the Laptop (Doc. 172 at 15). DAC also contends that Pendolino's forensic computer expert, Richard D. Connor, Jr., is on a fishing expedition "to provide an alternative explanation for the USB's insertion based on some unspecified evidence relating to other time periods, other DAC employees, and USB usage concerning the laptop where such an alternative explanation directly contradicts facts *as presented under oath by Defendant Pendolino himself.*" (Id.) (emphasis in original). Contrary to DAC's arguments, all the requests for production that are the subject of these

motions to compel are relevant to the claims and defenses that have been asserted. The requests are also proportional to the parties' needs.

Pendolino is asking the Court to compel DAC to comply with the following requests for production:

**Pendolino's Second Requests for Production**:

No. 2: All documents that concern, refer to, or evidence the use or location of the Identified USB from January 1, 2016, to present.

No. 3: All documents, including, but not limited to, the "setupapi.dev.log file," that concern, refer to, or evidence the connection of the Identified USB to any computer located at DAC from January 1, 2016 to present, including, but not limited to the computers assigned to Paula Stuart, Geeta Pandit, Justin Hughes, Lisa Olsen and Chris Schiffermiller.

(Doc. 166 at 6-7).

DAC has agreed to produce non-privileged documents in response to these requests by the deadline for expert disclosures (Doc. 166 at 7). And, although it does not believe it has any additional documents that are responsive to these requests, DAC is "willing to have additional forensic tests run to obtain additional forensic information that would be responsive to [these requests] provided that Pendolino agrees to pay the cost of obtaining this forensic evidence or provided that Pendolino utilizes his own expert to conduct the forensic examination necessary to obtain this information under the supervision of DAC's forensic expert in this matter." (Id.).

**Pendolino's Second Requests for Production**:

No. 11: All documents not previously produced which concern, refer to, or evidence any list of inventory or other record of USBs assigned to, held or used by DAC employees from January 1, 2013 through December 2016 (by way of example only, DAC000492).

(Id., at 8).

DAC objects to this request on the grounds that it is not proportional to the needs of the case and seeks information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence (Id.).

### Pendolino's Third Requests for Production:

> No. 10: A full forensic copy of the laptop computer used by Pendolino at DAC (please provide an estimate of the cost before production).

(Doc. 166 at 5-8).

Originally, DAC said it would be willing to permit Connor to conduct certain pre-identified tests on the mirror image of the Laptop under supervision by Platt (Doc. 166 at 6). Later, DAC said it would give Connor access to the mirror image created by Platt on two conditions. First, consistent with its response, DAC wants to know in advance what tests Connor intends to conduct, and then the tests must be performed under Platt's supervision (Doc. 172 at 7). DAC has proposed that Platt and Connor meet in advance to agree on the protocol for the examination, including a protocol for when Connor feels that he needs to go beyond the scope of his original predictions as to how he intends to probe the Laptop for evidence (Id.). Pendolino argues, for the reasons stated in Connor's declaration, that he cannot agree to this condition.

Connor has declared that he is unable to identify all the forensic tests that will be needed to obtain the information necessary to defend against DAC's claims (Doc. 167-1, ¶ 19). He explains that he has not evaluated the Laptop, does not know what programs are installed, how the operating system is configured, how event logging is configured, or what installed programs may provide activity logs (Id., ¶ 20). Connor also notes that this is not a case in which he is being asked to run search terms or locate specific files or email (Id., ¶ 19). Instead, he is being asked to analyze user activity. To do this Connor wants to

run forensic software on the Laptop to create a timeline of activities so that he can understand the context in which relevant events occurred (Id., ¶ 21). He wants to examine the timeline and types of activities on the Laptop before and after Pendolino stopped working for DAC (Id.). Connor also wants to examine events and actions which may suggest copying, transfer, deletion or modification of files and when that occurred; the historical use of USBs on the Laptop; and the history of copying to and deleting files from the Laptop in the usual course of Pendolino's employment (Id., ¶ 16). Connor says he does not know how Platt performed his analysis and is therefore, unable to speculate about what additional data he could or should review or what areas in which he and Platt will agree or disagree (Id., ¶ 22). In addition, Connor may attempt to replicate Platt's investigation (Id., ¶ 17). Lastly, Connor says there are potential sources of information that were not identified by Platt which may show relevant user activity on the laptop (Id., ¶¶ 25, 27).

Even though Pendolino argues that DAC's requirement of a pre-inspection protocol is unworkable, he has undercut his argument to some degree by providing the following list of types of data to be sought and reviewed:

> 1. USB usage on the Laptop, including, but not limited to, from October 5 through October 10, 2016.
>
> 2. All user activity on the Laptop, including, but not limited to, what files were accessed and modified, from October 5 through October 10, 2016.
>
> 3. All user activity on the Laptop from October 10, 2016 until the date Platt obtained the image of the Laptop.
>
> 4. Pattern/practice, if any, of materials copied to, or deleted from the Laptop during Pendolino's employment by DAC.
>
> 5. Files copied to or deleted from the Laptop from October 5 through October 10, 2016.

> 6. Files deleted from the Laptop from October 10, 2016, through the date Platt obtained the forensic image.
>
> 7. The accuracy of Platt's conclusions stated in his declaration filed in this action and his expert report dated September 10, 2018.
>
> 8. The basis for and data underlying the summary timeline attached to Platt's expert report as Exhibit B.
>
> 9. Other user profiles, if any, identified on the Laptop and when.
>
> 10. Information regarding the Identified USB, such as vendor name, size, etc.
>
> 11. Information regarding connection of the Identified USB to the Laptop.
>
> 12. Evidence of access to "every single" document on the DAC shared file as alleged in the Second Amended Complaint.

(Doc. 166 at 10).

DAC's second condition to allowing Connor to inspect a forensic copy of the Laptop is that Pendolino and Lumesis give DAC "reciprocal access to Defendants' electronic media, including the mirrored hard drive of the Lumesis desktop issued to Defendant Pendolino, the Lumesis DIVER Underwriter system, and the three mirrored USB drives apparently utilized by Defendant Pendolino while at DAC." (Doc. 172 at 6). The Court agrees with DAC that "the parties need equal forensic access to the electronic data to meet each other's claims and arguments." (Doc. 172 at 6). However, the Federal Rules of Civil Procedure do not permit DAC to condition its compliance with Pendolino's request for production number 10 on reciprocal access to information in Defendants' possession or control. If DAC wants information, it needs to propound its own requests for production.

Platt has already created and analyzed a mirror image of the Laptop hard drive. Pursuant to Pendolino's request number 10 Connor, should have an equal opportunity to examine, search, test, and analyze the same information that was made available to Platt. This is particularly the case because the parties are not simply searching for documents that may be uncovered by a keyword search. They want to know how the Laptop and Identified USB were used during a specific period of time. To make this determination both experts need to search the hard drive for traces, remnants, and residue and then follow those trails, wherever they lead.

While Pendolino is entitled to this discovery, DAC is entitled to the protection of its confidential and trade secret information and other information that is not relevant to this case. So that Pendolino has the necessary access to the mirror image of the Laptop hard drive and DAC's privacy interest is protected, Pendolino's request for production number 10 is **GRANTED** as follows:

(1) Connor shall agree in writing to be bound by the terms of the parties' Stipulated Confidentiality Agreement. The Court understands Connor has already signed the necessary paper. If not, he shall before there is any further action on request number 10.

(2) Within seven days from the rendition of this Order, Connor and Platt shall meet and confer to discuss the methods Connor will employ to search, test, and analyze the mirror image of the hard drive. The experts are not required to agree on the methodologies Connor will utilize and Connor is not limited to the methodologies he discusses with Platt. But, this process may save time and, if Platt is concerned that Connor intends to do something inappropriate, he can alert DAC's lawyers so that they can bring the concern to the Court. During their meet and confer Platt and Connor shall

agree on the time and place when Connor will be given access to the mirror image of the hard drive.

(3) On the agreed date, at the agreed location, the mirror image of the hard drive shall be produced for examination, search, testing, and analysis by Connor. This process shall continue, day-by-day, until Connor has completed his work. Platt may be present while Connor performs his work.

(4) All information collected by Connor shall be turned over to Platt for review by DAC and its attorneys. Within seven days of its receipt of the information collected by Connor, DAC shall produce a privilege log identifying any of the information it maintains is privileged or not relevant to this case. That information shall be isolated and preserved, the remaining information shall be produced to Pendolino's attorneys and Connor.

(5) Counsel shall meet and confer to resolve any disputes over the information listed on the privilege log. To the extent they are unable to resolve a dispute, the parties may motion the Court for a determination.

(6) At the conclusion of the case, the information obtained by Connor shall be disposed of in the manner prescribed in the parties' Stipulated Confidentiality Agreement. If the Agreement does not address disposal of the information, then all copies shall be delivered to the attorneys representing DAC.

(7) Pursuant to Federal Rule of Evidence 502(d), by engaging in the protocol established in this Order, the parties shall not be deemed to have waived the attorney-client privilege, work product protection, or any other privilege or immunity with respect to such disclosure in this case or in any other federal or state proceeding.

Pendolino's motion to compel his requests for production numbered 2, 3 and 11 is also **GRANTED**. The protocol for request number 10 also applies to requests number 2

and 3. Within ten days from the date of this Order DAC shall produce the information sought in request number 11.

DAC has motioned the Court to compel Pendolino and Lumesis to comply with the following requests for production:

**DAC's First Requests for Production to Pendolino**:

No. 1: Any computer device (including laptops, desk computers, and tablets), USB device, cell phone, physical storage device, or device used to access cloud storage, that was used to copy, download, or transmit Documents containing DAC's Confidential or Trade Secret Information.

No. 2: Any program or service used to store any of DAC's Confidential or Trade Secret Information or any Documents that contain DAC's Confidential or Trade Secret Information.

(Doc. 177 at 10).

These requests are premised on DAC's belief that Pendolino stole its confidential and trade secret information (Id.). At this point, Pendolino's denial that he has any of the requested information is a sufficient response. Platt's findings do not persuade the Court that DAC should be permitted to make a forensic examination of Pendolino's computer devices, programs and services in hopes of finding information responsive to these requests. Accordingly, DAC's motion to compel its requests 1 and 2 directed to Pendolino is **DENIED**.

**DAC's First Requests for Production to Lumesis**:

No. 7: All computer artifacts for any computer devices (including laptops, desk computers, and tablets) that Lumesis gave Pendolino access to or use of, including the Dell XPS desk top computer, serial number H080KB2, sufficient to show whether any DAC Documents have resided on, been transmitted to or from, been stored for any period of time on or in, or have been deleted from any such computer device, or any component or part thereof.

(Doc. 177 at 10).

Lumesis responded that it was willing "to provide an image of the hard drive from Pendolino's computer to an agreed upon independent third party to perform a search of artifacts which might be responsive to this request upon commonly accepted terms provided that the third party does not provide any document or information otherwise objected to." (Doc. 177 at 10). In a separate letter, Lumesis then asked DAC for "the specific protocols and searches it intends to use, and the nature, scope, and breadth of the investigation it intends to make." (Doc. 187 at 4-5). Lumesis also wants "to know the method(s) by which [DAC] intends (and will) protect all unrelated confidential and proprietary Lumesis business information, other than pursuant to the Stipulated Confidentiality Agreement …" (Id.). This dispute over process is easily resolved. DAC's motion to compel its request number 7 to Lumesis is **GRANTED**. The parties and their designated experts shall follow the protocol established for Pendolino's request number 10.

### DAC's Second Requests for Production to Lumesis:

> No. 5: All DAC Documents or DAC-related documents used in any way in connection with the creation of any changes to the DIVER presentation format made from January 1, 2016 to and including the date of your responses to these requests.

(Id.). Lumesis' responded to this request: "None. No DAC Documents or DAC-related Documents were used in any way in connection with the creation of any changes to the DIVER Underwriter Platform, either before or after January 1, 2016." (Id., at 11). DAC has not persuaded the Court to authorize a more intrusive search of Lumesis' records in hopes of finding information responsive to this request. Therefore, DAC's motion to compel its request number 5 is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on January 10, 2019.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record